Richard B. MEYERS, Appellant–
Plaintiff,

v.

FURROW BUILDING MATERIALS,
Rite–Mix Corporation, B–J Distributors,
Inc., Essroc Materials, Inc. f/k/a Coplay
Cement Company and Missouri Port-
land Cement Company, Appellees–De-
fendants.

No. 82A05–9505–CV–191.

Court of Appeals of Indiana.

Jan. 10, 1996.

Transfer Denied May 17, 1996.

R. Lawrence Daly, Robin R. Craig, Wright, Evans & Daly, Evansville, for Appellant.

Ross E. Rudolph, Jeffrey W. Henning, Mattingly, Rudolph, Fine & Porter, Evansville, John B. Drummy, Kightlinger & Gray, Indianapolis, Richard A. Bierly, John W. Woodard, Jr., Wyatt, Tarrant & Combs, New Albany, Steven K. Hahn, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for Appellees.

## OPINION

BARTEAU, Judge.

Richard Meyers appeals the trial court grant of summary judgment in favor of defendants Furrow Building Materials (Furrow), Rite–Mix Corporation (Rite–Mix), B–J Distributors, Inc. (B–J), Essroc Materials, Inc. (Essroc), and Missouri Portland Cement Company (Missouri). Meyers's appeal raises two issues, which we restate as:

1. Whether concrete mix is an "unreasonably dangerous" product as defined by Ind. Code § 33–1–1.5–2, and if so,

2. Whether the mix used by Meyers was "defective" under I.C. 33–1–1.5–2.5 due to inadequate warnings of the product's dangers. Because we find that Meyers incurred the risk of the injury he suffered, we need not address the dangerous nature of the product nor the adequacy of the warnings provided by the manufacturers, distributors, and sellers.

### *FACTS*

Meyers owned and operated a campground in Haubstadt, Indiana. On May 6, 1989, he purchased from Furrow 35 bags of Rite–Mix concrete mix in order to build a goldfish pond at the campground, and he poured the concrete for the pond the following day. After mixing and pouring about 30 bags of the concrete, Meyers began to trowel some freshly mixed concrete mix onto an area of the pond. He placed some boards into the wet concrete and knelt on the boards while he worked. His knees slipped off the boards into the wet concrete, and Meyers immediately felt a burning sensation on his knees. Still, he continued to work with his knees in the cement for five or six more minutes. He then got up and used a garden hose to rinse off the cotton painter's pants he was wearing. He did not raise or remove his pants to check his knees or to rinse the wet concrete mix off his skin. He then finished his work, cleaned his tools and concrete mixer, and removed his pants to put them into the washer. It was at that time, about 25 minutes after he hosed off his pants, that he discovered the skin on his legs had been injured.

Each bag of Rite–Mix concrete mix had the following warning on the front of the bag,

WARNING: INJURIOUS TO EYES, CAUSES SKIN IRRITATION, SEE CAUTION ON BACK

and the following caution on the back of the bag:

CAUTION

CONTAINS PORTLAND CEMENT, AVOID EYE CONTACT OR PROLONGED CONTACT WITH SKIN, WASH THOROUGHLY AFTER HANDLING. IN CASE OF EYE CONTACT, FLUSH WITH PLENTY OF WATER FOR AT LEAST 15 MINUTES. CONSULT A PHYSICIAN IMMEDIATELY. KEEP OUT OF REACH OF CHILDREN.

Each shipment of bulk Portland Cement by Essroc and Missouri also contained warnings. The Missouri bills of lading contained the following warning:

CAUTION

MAY CAUSE EYE OR SKIN INJURY

Contains Portland Cement—CAS Registry No. 65997—15—1. Contact with freshly mixed mortar or concrete may cause eye or skin injury. Skin contact may result in irritation or burning. In case of eye contact, flush immediately and repeatedly with water, and consult a physician promptly.

In case of skin contact, wash thoroughly immediately after contact and consult a physician.

The Essroc shipments contained this warning:

CAUTION: Freshly mixed cement, mortar, concrete or grout may cause skin injury. Avoid contact where possible and wash exposed skin areas promptly with water. If any cement mixtures get into the eye, rinse immediately and repeatedly with water and get prompt medical attention.

Missouri and Essroc also made Material Safety Data Sheets available to their customers. The data sheets explained in greater detail the caustic characteristics of cement and how to handle it safely. Meyers sued the defendant-appellees under the theory that the cement mix was an unreasonably dangerous product and that the appellees failed to provide adequate warnings of its danger. The trial court granted summary judgment in favor of all the defendants.

### DISCUSSION

■ Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the nonmoving party. When reviewing a trial court entry of summary judgment, we may consider only those portions of the record specifically designated to the trial court. When a defendant is the moving party, it is entitled to summary judgment if it can demonstrate that either the undisputed material facts negate at least one element of the plaintiff's claim, or if it raises a valid affirmative defense which bars the plaintiff's claim. *Perry v. Stitzer Buick, GMC, Inc.* (1992), Ind.App., 604 N.E.2d 613, 615–616, *aff'd. in part, rev'd in part on other grounds, and remanded, Perry v. Stitzer Buick GMC, Inc.* (1994), Ind., 637 N.E.2d 1282. We will affirm a summary judgment on any legal theory which is consistent with the designated evidence in the record.

*Wickey v. Sparks* (1994), Ind.App., 642 N.E.2d 262, 265, *trans. denied.*

■ The Indiana Products Liability Act imposes liability on parties who put a product in a defective condition unreasonably dangerous to a user into the stream of commerce. Ind.Code 33–1–1.5–3. A product is unreasonably dangerous if:

the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers.

I.C. 33–1–1.5–2. Thus, a product can be "dangerous," as that term is commonly understood, without being "unreasonably dangerous" for purposes of liability under the Act. *Smith v. AMLI Realty Co.* (1993), Ind. App., 614 N.E.2d 618, 622.

A product is defective under the Act if the seller[1] fails to give reasonable warnings about the product's danger, or to give reasonably complete instructions about its proper use. I.C. 33–1–1.5–2.5(b).

■ Assuming *arguendo* that wet concrete is an "unreasonably dangerous" product subject to the warning requirements of the Act, summary judgment for the defendants was proper because Meyers was aware of the risk of using the product that injured him. It is a defense to an action brought under the Products Liability Act that the user or consumer bringing the action knew of the defect and was aware of the danger in the product and nevertheless proceeded to make use of the product and was injured. I.C. 33–1–1.5–4(b)(1). This "incurred risk" defense is normally a question of fact, but incurred risk may be found as a matter of law if the evidence is without conflict and the sole inference to be drawn is that the plaintiff knew and appreciated the risk, but nevertheless accepted it voluntarily. *Perdue Farms, Inc. v. Pryor* (1995), Ind.App., 646 N.E.2d 715, 718, *reh'g denied.* To incur risk, the injured party must have been more than

---

**1.** Manufacturers, distributors, and retail dealers all fall within the definition of "seller" under the Act. I.C. 33–1–1.5–2.

generally aware of the potential for injury, but must have had actual knowledge of the specific risk. *Ferguson v. Modern Farm Systems, Inc.* (1990), Ind.App., 555 N.E.2d 1379, 1381, *trans. denied.*[2] The plaintiff need not have foresight that the particular injury which in fact occurred was going to occur. *Perdue Farms*, 646 N.E.2d at 719.

In *Ferguson*, we affirmed a summary judgment for the defendants because the plaintiff had, as a matter of law, incurred the risk of falling while climbing a ladder one-handed. The plaintiff there was aware of the specific risk of falling off a ladder whether he used one hand or both to climb. We noted that the "specific risk is not defined as the increased danger of climbing a ladder one-handed. The proper focus ... is the knowledge of the condition created by the defendants." 555 N.E.2d at 1381. The defendants there did not create a condition that required the plaintiff to climb with one hand. *Id.* Similarly, here, the defendants did not create a condition that required Meyers to bring the wet concrete in contact with his skin for an extended period of time, and Meyers was aware of the specific risk he incurred.

Meyers had been working with concrete on occasion for fourteen years prior to his injury. In the five-year period preceding Meyers's injury, he had poured approximately two thousand bags of packaged cement mix. He had previously used the brand of cement manufactured, distributed, and sold by the various defendants, and had read the warnings on the bags. Meyers had never suffered any burns or skin irritation while working with concrete, but knew that other persons had suffered burns as a result of working with the material. Despite his knowledge and experience, Meyers continued to work with his knees in wet concrete for five or six minutes even though he immediately felt a burning sensation when his knees slipped into the concrete. After he finished working in the concrete, he rinsed off his pants, but not his skin, with water. It was approximately 25 minutes later that he re-

moved his pants and noticed his injury. Meyers was aware of the specific risk of burns from wet concrete, and by his actions, he incurred the risk of the injury he suffered.

Because we find no genuine issue of material fact regarding the applicability of the incurred risk defense, the trial court grant of summary judgment is AFFIRMED.

SHARPNACK, C.J., and GARRARD, J., concur.

---

**2.** *Ferguson* was brought on both negligence and products liability grounds. We found that the products liability claim was precluded by the statute of limitations. However, its analysis of incurred risk is useful in determining the application of that defense in this products liability action.